**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,
P.O. Box 14596
Washington, DC 20044,

      Plaintiff,

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,
245 Murray Lane SW
Washington, DC 20528,

KRISTI NOEM, in her official capacity
as Secretary of Homeland Security,
245 Murray Lane SW
Washington, DC 20528,

NATIONAL ARCHIVES AND RECORDS
ADMINISTRATION,
8601 Adelphi Road
College Park, MD 20740, and

MARCO RUBIO, in his official capacity
as Acting Archivist of the United States
8601 Adelphi Road
College Park, MD 20740,

      Defendants.

Case No. 1:25-cv-3670

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.     Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings

this action for declaratory and injunctive relief against Defendants the United States Department

of Homeland Security ("DHS"); Kristi Noem, in her official capacity as Secretary of Homeland

Security; the National Archives and Records Administration ("NARA"); and Marco Rubio, in

his official capacity as Acting Archivist of the United States, under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq.*, the Federal Records Act ("FRA"), 44 U.S.C. §§ 3301, *et seq.*, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, and the Mandamus Act, 28 U.S.C. § 1361.

2.     Under the FRA and FOIA, agencies must maintain complete records of their activities and disclose them, subject to narrow exemptions, to the public upon request. These dual statutory mandates empower Americans to conduct meaningful oversight of their government and ensure federal agencies cannot exercise their power in secret.

3.     DHS now brazenly violates this statutory scheme by failing to preserve text message data documenting its transaction of the agency's public business.

4.     DHS has openly stated it "is unable to conduct a search of text messages beyond April 9, 2025, as *text message data generated after that date is no longer maintained*" by the agency. Ex. A at 16 (emphasis added).

5.     Despite being notified of this unlawful policy or practice, Defendants Noem and Rubio violate the FRA by failing to comply with their non-discretionary duties to initiate an enforcement action through the Attorney General in response to "any actual, impending, or threatened" removal, alteration, or destruction of federal records. *See* Ex. A at 1-7 (letters from Congressional representatives and civil society organization), Ex. B (CREW letter requesting NARA investigation); 44 U.S.C. §§ 2905(a), 3106 (mandatory enforcement duties).

6.     Further, DHS has adopted the related unlawful policy or practice of failing to search its electronic messaging data[1] in response to valid FOIA requests in violation of FOIA and

---

[1] "Electronic messaging data" encompasses text messages, electronic mail, and communications through other electronic messaging platforms and associated metadata. 44 U.S.C. § 2911(c)(1); *see* 36 C.F.R. § 1222.26(b) ("agencies must capture, manage, and preserve electronic records with appropriate metadata").

DHS regulations. *See* Ex. A at 25-26 (email response to a FOIA request stating "DHS no longer has the capability to conduct a search of text messages"); 5 U.S.C. § 552(a)(3)(A) ("each agency . . . shall make the records promptly available to any person"); 6 C.F.R. § 5.9 ("Records will not be disposed of or destroyed while they are the subject of a pending request, appeal, or lawsuit under the FOIA.").

7.      In implementing these illegal policies and practices, DHS has unlawfully denied expedited processing and withheld records responsive to CREW's September 12, 2025 FOIA request. *See* Ex. E (DHS denial letter). CREW's request seeks senior DHS officials' text message communications concerning DHS's attempt to create a centralized citizenship data bank by unlawfully pooling Americans' sensitive data and allowing agencies to conduct bulk queries using Social Security Numbers. *See* Ex. D (CREW's FOIA request).

8.      CREW now seeks relief: (1) declaring unlawful and enjoining Defendants from their policy or practice of failing to preserve electronic messages; (2) declaring unlawful Defendants' failure to initiate an FRA enforcement action through the Attorney General and ordering them to immediately do so; (3) declaring unlawful and enjoining Defendants from their policy or practice of failing to search electronic messages in response to FOIA requests; (4) requiring Defendants to process CREW's FOIA request on an expedited basis and promptly disclose the requested records; and (5) ordering the Defendants to preserve all records potentially responsive to CREW's pending FOIA requests.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331, §§ 2201-02, and 5 U.S.C. §§ 705-06. The Court has mandamus jurisdiction pursuant to 28 U.S.C. § 1361.

10.     Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**PARTIES**

11.     Plaintiff CREW is a non-partisan, non-profit government watchdog organization committed to protecting the rights of citizens to be informed about the activities of government officials and agencies and to ensuring ethics, transparency, and integrity in government. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW routinely uses government records made available to it under FOIA and other federal laws, and widely disseminates those records to the public.

12.     Given its status as a frequent FOIA requester, CREW has a strong operational interest in Defendants' compliance with their recordkeeping obligations under the FRA. The unlawful destruction, alienation, or removal of federal records relevant to CREW's work directly impedes its ability to fulfill its mission and its informational rights under FOIA.

13.     CREW has previously submitted more than 100 FOIA requests to DHS on a range of issues, has several pending requests with the agency and component sub-agencies on pressing matters of national importance, and will submit more requests in the future.

14.     Each of CREW's pending DHS FOIA requests seeks electronic messaging data that DHS admits it is no longer searching or preserving.

15.     Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1), 5 U.S.C. § 701(b)(1), and 44 U.S.C. § 2901(14). DHS has possession, custody, and control of records responsive to CREW's FOIA requests and is responsible for fulfilling CREW's FOIA requests.

16.     Defendant Kristi Noem is the Secretary of Homeland Security and is sued in her official capacity only.

17.     Defendant NARA is an agency within the meaning of 5 U.S.C. § 551(1), and 44 U.S.C. § 2901(14). NARA operates under the supervision and direction of the Archivist of the United States.

18.     Defendant Marco Rubio is the Acting Archivist of the United States and is sued in his official capacity only.

## LEGAL FRAMEWORK

### *The Freedom of Information Act*

19.     FOIA, 5 U.S.C. § 552, requires federal agencies to promptly release requested records to the public, unless one or more specific statutory exemptions apply.

20.     FOIA requires agency searches for requested records to be "reasonably calculated to uncover all relevant documents," including by searching all systems and repositories of data "likely to turn up the information requested." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325–26 (D.C. Cir. 1999) ("The agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.") (citations and quotations omitted).

21.     DHS regulations require that the agency preserve copies of all requested records until their disposition or destruction is authorized pursuant to NARA regulations. 6 C.F.R. § 5.9. Further, records may not be "disposed of or destroyed while they are the subject of a pending request, appeal, or lawsuit under the FOIA." *Id.*

22.     An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

23.    Agencies must also promulgate regulations that provide for expedited processing of FOIA requests where the requester demonstrates a "compelling need," as well as in "other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i).

24.    FOIA defines "compelling need" to include requests "made by a person primarily engaged in disseminating information" where there is an "urgency to inform the public concerning actual or alleged Federal Government activity." *Id.* § 552(a)(6)(E)(v)(II).

25.    DHS regulations require expedited processing in cases where the agency determines, among other things, that there is "an urgency to inform the public about an actual or alleged federal government activity," 6 C.F.R. § 5.5(e)(1)(ii) or there is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," *id.* § 5.5 (e)(1)(iv).

26.    Agencies must make a determination on a request for expedited processing within 10 calendar days "after the date of the request." 5 U.S.C. § 552(a)(6)(E)(ii)(I); *see also* 6 C.F.R. § 5.5(e)(4). Once expedited processing is granted, agencies must process the request "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii); *see also* 6 C.F.R. § 5.5(e)(4).

27.    Agency action to deny a request for expedited processing, or failure by an agency to respond in a timely manner, is subject to judicial review. 5 U.S.C. § 552(a)(6)(E)(iii).

28.    A plaintiff may also, "separate from claims seeking relief for specific FOIA requests, . . . assert a 'claim that an agency policy or practice will impair the party's lawful access to information in the future.'" *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 293 (D.D.C. 2013) (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)); *see CREW v. DOJ* , 846 F.3d 1235, 1242 (D.C. Cir. 2017).

29.    A plaintiff can make such a claim by establishing "that the agency has adopted, endorsed, or implemented some policy or practice that constitutes an ongoing failure to abide by the terms of the FOIA." *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 249 F. Supp. 3d 275, 281 (D.D.C. 2017) (cleaned up) (collecting cases). "[F]ailures to adhere to FOIA's pre-litigation requirements, including . . . records management provisions needed to enable 'prompt' determinations," can constitute the bases of a policy and practice claim. *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 779 (D.C. Cir. 2018); *see id.* at 780-82.

30.    A plaintiff may seek equitable relief to "direct[] a habitually noncompliant agency to comply" with the requirements of FOIA. *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 227 (D.D.C. 2011). The D.C. Circuit "expressly 'd[oes] not require egregious agency action'" and "[i]nstead" permits "a plaintiff . . . to prevail" simply by showing some "failure to abide" by FOIA's terms. *CREW v. U.S. Dep't of Just.*, --- F. Supp. 3d ----, No. 24-cv-1497, 2025 WL 879664, at *9 (D.D.C. Mar. 21, 2025) (quoting *Judicial Watch*, 895 F.3d at 781-83, *Payne*, 837 F.2d at 491, and *Muttitt*, 926 F. Supp. 2d at 293).

### The Federal Records Act

31.    The FRA governs the creation, management, and disposal of federal records. *See* 44 U.S.C. §§ 2101, *et seq.*; §§ 2901, *et seq.*; §§ 3101, *et seq.*; and §§ 3301, *et seq.*

32.    Federal records include "all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business." 44 U.S.C. § 3301(a)(1)(a).

33.    Agency heads must ensure their agencies "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency." *Id.* § 3101.

34.     Agency heads must "establish and maintain" a program for management of the agency's federal records, which "shall provide for . . . effective controls over the creation and over the maintenance and use of records in the conduct of current business." 44 U.S.C. § 3102.

35.     The Archivist has a central oversight role and must "promulgate standards, procedures, and guidelines with respect to records management" across the federal government. *Id.* § 2904.

36.     Pursuant to this authority, the Archivist has promulgated binding regulations detailing what types of records agencies must create and maintain, as well as the "policies, procedures, and standards" agencies must employ to preserve covered federal records. *See* 36 C.F.R. §§ 1220.34; 1222.22-1222.34.

37.     NARA regulations clarify federal records include "electronic messaging systems." 36 C.F.R. §§ 1220.12, 1220.18; *see also* 44 U.S.C. § 2911(a) (requiring electronic messages sent using non-official electronic messaging accounts to be preserved by copying or forwarding to an official account).

38.     NARA regulations further require that agencies "capture, manage, and preserve electronic records" and be able to "access and retrieve electronic records, including electronic messages, through electronic searches." 36 C.F.R. § 1222.26(b).

39.     Prior to adopting the unlawful policy or practice at issue in this suit, DHS policy had required that agency officials ensure that electronic records are "capture[d] and manage[d] in compliance with Federal records management laws, regulations, and policies." DHS, Policy Directive 141-03, *Electronic Records Management Updates for Chat, Text, and Instant Messaging*, (Feb. 23, 2018), https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-

directive.pdf. This prior policy had required preservation of records capturing "DHS business transactions by electronic means," including through "text… chat… [or] IM." *Id.*

40.    Courts reviewing agency action for possible violations of the FRA may "assess both formal and informal recordkeeping policies." *See Hegseth*, 2025 WL 1721995 at *4; *Citizens for Resp. & Ethics in Wash. v. Pruitt*, 319 F.Supp. 3d 252, 256-58 (D.D.C. July 24, 2018). "A *de facto* agency-wide policy that results in systematic violations of the FRA" is "actionable under the FRA." *Hegseth*, 2025 WL 1721995 at *6.

41.    The FRA further requires agency heads to establish safeguards against the removal or loss of federal records. *See* 44 U.S.C. § 3105. To prevent unlawful removal or loss of records, the FRA creates a "system of administrative enforcement." *Armstrong v. Bush*, 924 F.2d 282, 294 (D.C. Cir. 1991).

42.    If an agency head becomes aware of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records in the custody of the agency," the agency head "shall notify the Archivist" and "with the assistance of the Archivist shall initiate action through the Attorney General for the recovery" of those records. 44 U.S.C. § 3106(a); *see also* 36 C.F.R. § 1230.14 (detailing how agencies "must report promptly any unlawful or accidental removal, defacing, alteration, or destruction of records in the custody of that agency to NARA").

43.    If the agency head "does not initiate an action for such recovery or other redress within a reasonable period of time after being notified of any such unlawful action . . . or is participating in, or believed to be participating in any such unlawful action, the Archivist shall request the Attorney General to initiate such an action, and shall notify the Congress when such a request has been made." 44 U.S.C. § 3106(b); *see also id.* § 2905(a) (similar).

44.     The enforcement provisions of the FRA assigned to agency heads and the Archivist are mandatory and non-discretionary. *See Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 956 (D.C. Cir. 2016) (citing *Armstrong*, 924 F.2d at 294).

***The Administrative Procedure Act***

45.     The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

46.     The term "agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

47.     A court reviewing a claim under 5 U.S.C. § 702 "shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

48.     The reviewing court shall "hold unlawful and set aside agency action" found to be "not in accordance with law" or taken "without observance of procedure required by law," and shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1), 706(2)(A), 706(2)(D). "[T]he 'law' that generates a mandatory duty need not be a statute—it can also be an 'agency regulation[ ] that ha[s] the force of law[.]'" *Ctr. for Biological Diversity v. Zinke*, 260 F. Supp. 3d 11, 21 (D.D.C. 2017) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)).

49.     The court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be [] arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. §§ 706(1), (2)(A).

50.     The APA authorizes claims challenging the adequacy of agency recordkeeping policy, guidelines, and directives. *See Armstrong*, 924 F.2d at 293-95 (D.C. Cir. 1991).

51.     The APA also authorizes claims challenging the failure of an agency and NARA to initiate a DOJ enforcement action pursuant to 44 U.S.C. § 3106 and § 2905(a). *See, e.g., Judicial Watch*, 844 F.3d at 954.

***Mandamus***

52.     Where a plaintiff can "demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists," *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), "[t]he district courts shall have original jurisdiction" to compel performance of the duty by issuing a writ of mandamus. 28 U.S.C. § 1361.

53.     An action for mandamus may be used to compel a government officer to follow a non-discretionary duty "imposed by statute, regulation, or some other legal source." *Black v. Snow*, 272 F. Supp. 2d 21, 28 (D.D.C. July 23, 2003); *accord Cervase v. Office of Fed. Reg.*, 580 F.2d 1166, 1171 (3d Cir. 1978).

## FACTUAL ALLEGATIONS

54.     Since assuming office, the Trump administration has demonstrated an ongoing and brazen disregard of its records management and preservation obligations, particularly in relation to electronic messaging data.

55.     On February 7, 2025, President Donald Trump fired Archivist Colleen Shogan without providing notification to Congress as to the rationale for Shogan's removal, as is statutorily required.[2]

---

[2] Ali Swenson and Gary Fields, *The National Archives is Nonpartisan but has found itself targeted by Trump*, AP (Feb. 26, 2025), https://apnews.com/article/trump-national-archives-firings-layoffs-historical-recordkeeping-559027fdd2f634263bea7774a78d66fe; *see* 44 U.S.C. §

56.    In March, senior administration officials used an ephemeral messaging application, which automatically deleted federal records, to coordinate military strikes in Yemen. In response, a judge in this District issued an emergency injunction to compel the administration, including Defendant Rubio, to comply with its obligations under the FRA to initiate an enforcement action through the Attorney General. *Hegseth*, 2025 WL 1721995 at *7-11.

57.    Months later, White House advisor Anthony Salisbury reportedly revealed senior White House officials had discussed deployment of the active duty military to Portland, Oregon via an ephemeral messaging application. Mr. Salisbury reportedly revealed these discussions by sending messages on his phone at a public event in plain view of others.[3]

58.    On September 20, 2025, President Trump reportedly inadvertently posted a private social media message publicly in which he urged Attorney General Pamela Bondi to prosecute specific individuals.[4]

59.    Concurrently, the Trump administration has taken action to make accessing federal records through the FOIA process much more difficult across the government.[5]

---

2103 (requiring the President to "communicate the reasons for" the removal of the Archivist "to each House of the Congress").

[3] *See* Adam Gabbatt, *White House official inadvertently reveals plans to send elite army unit to Portland*, The Guardian (Oct. 4, 2025), https://www.theguardian.com/us-news/2025/oct/04/us-military-portland-oregon-trump-administration.

[4] *See* Josh Dawsey, Sadie Gurman, and Aruna Viswanatha, *Inside the Justice Department where the President Calls the Shots*, Wall Street Journal (Oct. 8, 2025), https://www.wsj.com/politics/policy/trump-doj-inside-political-enemies-17f13f72.

[5] *See generally* Amanda Teuscher, *The Freedom of Information Act and deteriorating federal transparency infrastructure*, Just Security (Aug. 4, 2025), https://www.justsecurity.org/118371/foia-federal-transparency-infrastructure/.

60.     In a particularly egregious example, on April 1, 2025, the FOIA office of the United States Centers for Disease Control and Prevention was abruptly eliminated in its entirety, making it impossible for the agency to comply with its statutory obligations under FOIA.[6]

***DHS's Failure to Preserve and Search Electronic Messaging Records***

61.     DHS, like all federal agencies, uses electronic messaging systems to conduct public business.

62.     CREW, a regular requestor of documents from DHS, often receives relevant documents consisting of text message and other electronic messaging data in response to its FOIA requests.

63.     Until recently, DHS's longstanding policy and practice had been to preserve electronic messaging data as required by law, following processes and standards set out in NARA regulations.[7]

64.     By email dated August 5, 2025, the DHS Privacy Office informed a FOIA requester that "the Department of Homeland Security (DHS) Privacy Office is unable to conduct a search of text messages, as text message data generated after April 9, 2025, is no longer maintained." Ex. A at 16.

65.     Thus, DHS has adopted a recordkeeping policy or practice of failing to preserve electronic messaging data, including text message data, since at least April 9, 2025.

---

[6] *See* Alexander Tin, *RFK Jr. purges CDC and FDA's public records teams, despite "transparency" promises*, CBS News (Apr. 1, 2025), https://www.cbsnews.com/news/rfk-jr-purges-cdc-fda-records-transparency-teams/.

[7] *See* 36 C.F.R. §§ 1220.12, 1220.18, 1220.34, 1222.22-1222.34. *See also* Policy Directive 141-03, *Electronic Records Management Updates for Chat, Text, and Instant Messaging*, DHS (Feb. 23, 2018), https://www.dhs.gov/sites/default/files/2024-06/141-03_policy-directive.pdf.

66.    By email dated August 21, 2025, the DHS Privacy Office further represented to a FOIA requester that "DHS no longer has the capability to conduct a search of text messages." Ex. A at 25, 26.

67.    Thus, DHS has adopted a policy or practice of systematically failing to search electronic messaging data, including text message data, in response to FOIA requests.

68.    On August 28, 2025, the nonprofit government watchdog organization American Oversight sent letters to Defendant Noem and Defendant Rubio alerting them to the possible unlawful removal of electronic messaging records and requesting they comply with their duties under the FRA. Ex. A at 3-7.

69.    On August 29, 2025, Congressman Bennie Thompson, the Ranking Member of the House Committee on Homeland Security, and Congressman Shri Thanedar, Ranking Member of the Subcommittee on Oversight, Investigations, and Accountability, sent a letter to Defendant Rubio requesting he initiate an investigation into whether Defendant Noem and other senior DHS officials may have violated their obligations under the FRA, based on the agency's stated electronic messaging policy or practice. Ex. A at 1-2.

70.    On information and belief, neither American Oversight nor Congressmen Thompson and Thanedar have received responses from Defendants.

71.    On September 12, 2025, CREW sent a letter to Defendant Rubio and NARA's Acting Inspector General Will Brown requesting that Defendant Rubio and NARA promptly comply with their mandatory statutory duties to investigate DHS's stated electronic messaging policy and initiate an enforcement action through the Attorney General, and indicated CREW will pursue all legal remedies if they fail to do so. *See* Ex. B.

72.    To date, Defendants have not responded to CREW's September 12 letter.

73.     On information and belief, Defendants have not investigated or changed the unlawful electronic messaging policies or practices alleged above.

74.     On information and belief, Defendants have not initiated an enforcement action through the Attorney General concerning electronic messaging policies or practices alleged above.

***CREW's September 12, 2025 Expedited FOIA Request to DHS***

75.     On September 12, 2025, CREW submitted an expedited FOIA request to DHS seeking specific senior DHS officials' electronic messages concerning the agency's Systemic Alien Verification for Entitlements (SAVE) program. Ex. D.

76.     The SAVE program is "an inter-governmental initiative" administered by the United States Citizenship and Immigration Service ("USCIS"), a component agency of DHS, and primarily designed to assist federal, state, tribal, and local agencies in confirming individuals' citizenship or immigration status prior to granting benefits and licenses.[8]

77.     USCIS made a series of dramatic changes to the SAVE program earlier this year to expand its scope and functionality, including by introducing a new search-by-SSN function that allows SAVE users to bulk upload and query millions of Americans' Social Security data to purportedly verify U.S. citizenship.[9] In a press release announcing these changes, USCIS

---

[8] DHS, *Privacy Impact Assessment for the Systematic Alien Verification Entitlements Program*, DHS Ref. No. DHS/USCIS/PIA-006(c) at 2 (June 30, 2020), https://perma.cc/HU2M-NTL8 ("SAVE PIA").
[9] USCIS Deploys Common Sense Tools to Verify Voters, USCIS (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters; Voter Registration and Voter List Maintenance Fact Sheet, USCIS (last updated Aug. 27, 2025), https://www.uscis.gov/save/current-user-agencies/guidance/voter-registration-and-voter-list-maintenance-fact-sheet.

encouraged state and local governments to use the SAVE program to verify voters' and voter registrants' citizenship status.[10]

78.     The full extent and nature of USCIS's recent efforts to expand state and local agencies' access and usage of the SAVE program, including through use of voters' Social Security Numbers, is unclear.

79.     USCIS has reportedly offered election officials in some states the opportunity to participate in a "soft launch" of a new feature that allows searching the overhauled SAVE program using "just the last four digits of voters' Social Security numbers."[11]

80.     CREW's expedited FOIA request sought:

> a.     All text messages and messages on electronic messaging platforms sent or received by the DHS officials (agency custodians) listed below, concerning or referencing the Systemic Alien Verification for Entitlements (SAVE) program.

Ex. D at 1 (footnotes removed).

81.     CREW's expedited FOIA request listed the following agency custodians:

> a.     Kristi Noem, Secretary; Troy Edgar, Deputy Secretary; Andrew Whitaker, Executive Secretary; Joseph Mazzar, Acting General Counsel; Rob Law, Senior Advisor; Tony Pham, Senior Advisor; Philip Hegseth, Senior Advisor; Corey Lewandowski, Special Government Employee; and Anyone serving as Chief of Staff.

*Id.*

---

[10] *See* USCIS Deploys Common Sense Tools to Verify Voters, USCIS (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters.

[11] Jude Joffe-Block and Miles Parks, *33 million voters have been run through a Trump administration citizenship check*, NPR (Sept. 10, 2025), https://perma.cc/QWL3-DCVR; A.P. Dillon, *State Board of Elections tables SAVE invitation*, North State Journal (Sept. 4, 2025), https://perma.cc/X2GM-Y88R.

82.     CREW's expedited FOIA request provided the following information on CREW's priorities to assist DHS FOIA staff with processing the request:

> a.  CREW is most interested in information regarding the scope, terms, and conditions of elections officials' access to or use of information taken from the SAVE program; and privacy or data security safeguards in place for protecting personally identifiable information or immigration status information shared by DHS.

*Id.* at 2.

83.     CREW's expedited FOIA request also proposed search terms and key words to assist DHS FOIA staff with conducting the search. *Id*.

84.     CREW submitted each expedited request via email to <u>foia@hq.dhs.gov</u> as directed by DHS's website which instructs FOIA requestors to "[d]irect FOIA requests to the appropriate component contact."[12]

85.     CREW's expedited request sought a fee waiver. Ex. D at 2-4.

86.     CREW's request for expedited processing cited the "urgency to inform the public concerning actual or alleged Federal Government activity," based in part on upcoming elections. Ex. D at 4-6.

87.     CREW's request for expedited processing also cited the "widespread and exceptional media interest" in the coordination between Defendants and state election officials through the SAVE program. Ex. D at 6.

88.     On September 17, 2025, DHS acknowledged receipt of CREW's September 12 FOIA request and assigned it tracking number 2025-HQFO-06301. *See* Ex. E.

89.     In its acknowledgement, DHS denied CREW's request for expedited processing of its FOIA request. *See id.*

---

[12] DHS, *FOIA Contact Information* (last updated May 30, 2025), <u>https://www.dhs.gov/foia-contact-information</u>.

90.    To date, DHS has not further responded to CREW's September 12 FOIA request.

***Other Pending CREW FOIA Requests Implicated by DHS's Unlawful Electronic Messaging Policy or Practice***

91.    CREW has submitted 13 other FOIA requests to DHS or its components in the period since April 9, 2025, the date after which DHS stated the agency can no longer maintain or search electronic messaging data. *See* Ex. C (CREW's pending requests).

92.    All of CREW's pending FOIA requests requested "responsive records regardless of format, medium, or physical characteristics," including "without limitation all correspondence, letters, emails, [and] text messages." Ex. C at 2-3, 8, 11, 16, 20, 28, 36, 39, 43, 51, 59, 67, 73.

93.    To date, DHS has released no electronic messaging data in response to the foregoing FOIA requests.

## CLAIMS FOR RELIEF

### Count One
### Violation of APA – Agency Action Contrary to Law
### (5 U.S.C. § 706; 44 U.S.C. §§ 2911, 3106; 36 C.F.R. §§ 1220.34, 1222.22-34)

94.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

95.    Under the APA, a court shall "hold unlawful and set aside agency action" that is not in accordance with the law," 5 U.S.C. § 706(2)(A), or is taken "without observance of procedure required by law," *id.* § 706(2)(D).

96.    By adopting a formal or informal policy or practice that prevents electronic messaging data generated after April 9, 2025 from being preserved, Defendants have adopted a records management policy or practice in violation of the FRA and binding NARA regulations. *See* 44 U.S.C. §§ 2911(a), 3106(a); 36 C.F.R. § 1220.34, 1222.22-34.

97.    Defendants' unlawful and intentional policy or practice has resulted and will continue to result in the inability to access or timely access documents to which CREW is statutorily entitled.

98.    DHS's unlawful policy or practice has harmed and will continue to harm CREW by depriving it of information to which it is entitled by law, and by requiring it to incur the costs and delay associated with litigating its entitlement to the documents.

**Count Two**
**Violation of APA – Arbitrary and Capricious Agency Action**
**(5 U.S.C. § 706)**

99.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

100.    Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

101.    Defendants' decision to institute a policy or practice of not preserving, maintaining, or searching electronic messaging data generated after April 9, 2025 was arbitrary and capricious for at least the following reasons:

    a.    Defendants failed to articulate a reasoned explanation for its sudden actions in violation of statute and regulation which would contradict previous agency policy;

    b.    Defendants failed to consider the effects of abruptly ceasing to preserve or search electronic messaging data; and

    c.    Defendants failed to consider the reliance interests of FOIA requesters and the public, who are legally entitled to request and receive federal records that are not exempted from disclosure.

102.    Defendants' operative policies or practices of failing to preserve electronic messaging data or search such data in response to valid FOIA requests were final agency actions.

103.    Defendants' arbitrary and capricious actions have resulted and will continue to result in the inability to access or timely access documents to which CREW is statutorily entitled.

104.    DHS's actions have harmed and will continue to harm CREW by depriving it of information to which it is entitled by law, and by requiring it to incur the costs and delay associated with litigating its entitlement to the documents.

**Count Three**
**Violation of APA – Agency Action Unlawfully Withheld**
**(5 U.S.C. § 706; 44 U.S.C. §§ 2905, 3106)**

105.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

106.    Under the APA, a court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

107.    The FRA imposes on Defendants Noem and DHS nondiscretionary duties to initiate an enforcement action through the Attorney General when the agency "knows or has reason to believe" of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction" of federal records within the agency's legal ownership, custody, or control." 44 U.S.C. § 3106(a).

108.    The FRA imposes on Defendant Rubio and NARA a nondiscretionary duty to request that the Attorney General initiate an enforcement action (and so notify Congress) when a federal agency either (1) fails to initiate such an action "within a reasonable period of time after being notified" of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction" of federal records within the agency's legal

ownership, custody, or control, or (2) "is participating in, or believed to be participating in any such unlawful action." 44 U.S.C. §§ 3106(b), 2905(a).

109.    On information and belief, DHS has unlawfully failed to preserve federal records in violation of the FRA and NARA regulations, including, but not limited to, electronic messaging data.

110.    On information and belief, Defendants have failed to initiate an FRA enforcement action through the Attorney General.

111.    On information and belief, Defendants have failed to take any other remedial action, including by restoring, recovering, retrieving, salvaging, or reconstructing the electronic messaging data at issue.

112.    Defendants have "unlawfully withheld or unreasonably delayed" agency action by failing to conduct their non-discretionary duties under the FRA by initiating an enforcement action through the Attorney General.

**Count Four**
**Mandamus – Failure to Initiate a Record Recovery Action**
**(28 U.S.C. § 1361; 44 U.S.C. §§ 2905, 3106)**

113.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

114.    "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

115.    As alleged above in paragraphs 41-44, the FRA imposes non-discretionary duties on Defendants with respect to DHS records.

116.    As alleged above in paragraphs 68-74, Defendants have violated their non-discretionary duties under the FRA.

117.    As alleged above in paragraphs 41-44, Plaintiff has a clear right to relief from Defendants' FRA violations.

118.    To the extent that the Court finds that the APA does not authorize any of the relief sought herein, mandamus is Plaintiff's only adequate remedy, and there are compelling equitable circumstances for issuing the writ.

119.    Plaintiff is therefore entitled to a writ of mandamus compelling Defendants to comply with their non-discretionary duties under the FRA.

**Count Five**
**Violation of FOIA – Policy or Practice of Violating FOIA**
**(5 U.S.C. § 552; 6 C.F.R. § 5.9)**

120.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

121.    A plaintiff "may challenge an agency's 'policy or practice'" of violating FOIA "where it 'will impair the party's lawful access to information in the future.'" *CREW*, 846 F.3d at 1242.

122.    By no longer maintaining or searching electronic messaging data, including text message data, generated after April 9, 2025 in response to valid FOIA requests, DHS has adopted or is engaged in a policy or practice of violating FOIA and its implementing regulations.

123.    Defendants' unlawful and intentional actions have resulted and will continue to result in the inability to access or timely access documents to which CREW is statutorily entitled.

124.    DHS's unlawful policy or practice has harmed and will continue to harm CREW by depriving it of information to which it is entitled by law, and by requiring it to incur the costs and delay associated with litigating its entitlement to the documents.

**Count Six**
**Violation of FOIA – Wrongful Denial of Expedited Processing**
**(5 U.S.C. § 552; 6 C.F.R. 5.5(e)(1)(iv))**

125.    CREW re-alleges and incorporates by reference all preceding paragraphs.

126.    In its September 12, 2025 FOIA request, CREW properly submitted expedited processing request and FOIA request seeking records within the possession, control, and custody of DHS.

127.    CREW properly sought expedition from Defendants because of the urgency to inform the public about an actual or alleged federal government activity.

128.    CREW further properly sought expedition because the subject of the request is a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence.

129.    CREW is primarily engaged in disseminating information.

130.    DHS wrongfully denied CREW's requests for expedited processing and improperly failed to process CREW's requests on an expedited basis.

131.    By denying CREW's requests for expedition and failing to timely release all requested records in full to CREW, DHS is in violation of FOIA and its implementing regulations.

**Count Seven**
**Violation of FOIA – Wrongful Withholding of Records**
**(5 U.S.C. § 552)**

132.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

133.    In its September 12, 2025 FOIA request, Plaintiff properly sought records in the possession, custody, and control of Defendant DHS.

134.    Defendant wrongfully withheld agency records requested by CREW by failing to make determinations on CREW's requests within the statutorily prescribed time period of 20 business days, as required by 5 U.S.C. § 552(a)(6)(A), and by continuing to withhold documents that are non-exempt and responsive to CREW's FOIA requests.

135.    CREW has constructively exhausted its administrative remedies.

136.    Accordingly, CREW is entitled to injunctive and declaratory relief requiring Defendants to immediately process and disclose all requested records to CREW.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that by adopting a policy or practice of failing to preserve electronic messaging data in violation of the FRA and agency regulations, Defendants took final agency action that was contrary to law, arbitrary, and capricious;

(2) Preliminarily and permanently enjoin Defendants from continuing to engage in an impermissible policy or practice of failing to preserve electronic messaging data;

(3) Declare Defendants in violation of their nondiscretionary duties under the FRA to initiate an enforcement action through the Attorney General;

(4) Order Defendants to immediately initiate an enforcement action through the Attorney General and to seek any other redress authorized by law;

(5) Declare that by categorically failing to search certain electronic messaging data in response to FOIA requests, Defendants have adopted and are engaged in a policy or practice in violation of FOIA;

(6) Enter a preliminary and permanent injunction directing Defendants to promptly comply with FOIA, including by searching electronic messaging data in response to FOIA requests;

(7)  Declare that Plaintiff is entitled to expedited processing and disclosure of the non-exempt records it has requested under FOIA;

(8)  Enter a preliminary and permanent injunction directing Defendants to expeditiously and fully process Plaintiff's FOIA requests and disclose all non-exempt records and a *Vaughn* index to Plaintiff;

(9)  Order the Defendants to preserve all records, in whatever form they exist, potentially responsive to all of CREW's pending FOIA requests prior to and during the processing of these requests;

(10)  Order Defendants to grant CREW's requests for fee waivers;

(11)  Provide for expeditious proceedings in this action;

(12)  Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and ensure compliance with this Court's orders;

(13)  Award CREW its costs and reasonable attorneys' fees in this action; and

(14)  Grant such other relief as the Court may deem just and proper.

Date: October 15, 2025

Respectfully Submitted,

_Kaf_
_____
Kayvan Farchadi (D.C. Bar No. 1672753)
Nikhel S. Sus (D.C. Bar No. 1017937)
Citizens for Responsibility and Ethics
  in Washington
PO Box 14596
Washington, DC 20044
Phone: (202) 408-5565
Fax: (202) 508-5020
kfarchadi@citizensforethics.org
nsus@citizensforethics.org

*Counsel for Plaintiff*